# EXHIBIT A
## Mr. Ruble's Income Share Agreement – April 20, 2019



## INCOME SHARE AGREEMENT (TUITION ISA)

**PARTICIPANT:** Garrett Ruble
Indianapolis, Indiana

**INSTITUTION:** Kenzie Academy
47 S. Meridian St
Indianapolis, IN 46204

**\*\*\* THIS IS NOT A LOAN OR CREDIT \*\*\***

### PARTICIPATION DISCLOSURE

| ISA Amount | Income Share | Payment Term | Payment Cap |
|---|---|---|---|
| $ 23,900.00 | 17.50% | 48 months | $ 59,750.00 |
| The market charge for the training services you will receive through this ISA, plus any funding charges | The percent of your total earned income that you will share each month | The maximum number of months during which you will share your income | The maximum amount you will pay over the payment term |

### ITEMIZED TOTAL ISA AMOUNT

| | |
|---|---|
| Amount paid to you | $0.00 |
| Amount credited to others on your behalf<br>• Kenzie Academy | + $ 23,900.00 |
| Initial funding charges<br>• Origination fee<br>• Disbursement fee | + $0.00 |
| ISA Amount | = $ 23,900.00 |

### ABOUT YOUR CONTRACT TERMS

- **Your income share is the percentage of your future earned income you will owe in return for the amount credited to your account.** It is not an interest rate or annual percentage rate.
- **Your income share is fixed.** This means that it will never differ from the income share percentage shown above.
- **Your payments will vary based on your earned income.** The total amount you will pay may be more or less than your ISA Amount.
- **The maximum you will pay is $ 59,750.00 over the payment term, regardless of your earned income.** You may also prepay this amount, less any payments made to date plus any outstanding fees, in order to extinguish your obligation before the payment term ends.

**FEES:** Late Fee – The lesser of $5 and 5% of the payment amount due. **Returned Payment Fee –** $25.

### Payment Illustration

An Income Share Agreement (ISA) is different from a loan (which has principal and interest payments) or a conventional tuition payment plan (which requires payment in full and may charge interest). An ISA requires you to pay a fixed percentage of your earned income each month for a fixed period of time. The table below compares illustrative monthly and total ISA payments for different levels of average earned income.

| Average Annual Earned Income | $ 23,900.00 ISA<br>17.50% income share,<br>48 monthly payments | |
|---|---|---|
| | Average Monthly Payments | Total Payments |
| $ 30,000 | $ 0 | $ 0 |
| $ 40,000 | $ 583 | $ 28,000 |
| $ 50,000 | $ 729 | $ 35,000 |
| $ 60,000 | $ 875 | $ 42,000 |
| $ 70,000 | $ 1,021 | $ 49,000 |

**About this illustration**
The illustration assumes that you make monthly payments tied to earned income over 48 months. If you return to school or when your monthly earned income is less than $ 3,333.34 (equivalent to $ 40,000.08/year), your account will be placed in a deferment status, and you will not make payments for every month your income is below this threshold. If your cumulative payments reach the payment cap, then you will make no further payments, and your account will be closed in good standing. Your actual payments may be a blend of the payments displayed since your earnings may fluctuate over time. Remember that your earned income will depend on many factors, including your credentials, occupation, industry, and the area of the country in which you work. All payments have been rounded to the nearest dollar.

Contract – v7

Page 1 of 16

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



## Next Steps & Terms of Acceptance

| **This offer is good until:** **May 20, 2019** | 1. **Questions?** Contact Kenzie Academy's Community Manager (erika@kenzie.academy) for more information.<br>2. **You have until May 20, 2019, to accept this offer.** The terms of this offer will not change except as required by law. **To accept the terms of this ISA, sign and date below.** |
|---|---|

## Participation Disclosure Reference Notes

### Income Share Agreement (ISA)
- An ISA is not a loan or other credit instrument. It represents your obligation to make payments linked to a specific percentage of your earned income and does not give us any rights regarding your educational, training, or employment pursuits.
- The amount you will be required to pay under this ISA may be **more or less** than the funds credited to your account and will vary in proportion to your future earned income.

### Eligibility Criteria
- You must be enrolled in a Kenzie Academy program.
- You must be a U.S. citizen (includes naturalized citizens) or permanent resident.
- At the time of the application, you must be at least the age of majority for your state of residence.
- Your total obligations under all income-based agreements with us or another person must not require you to pay an aggregate income share in excess of twenty (20) percent of your earned income in any given month.

### Grace Period, Monthly Payments, Reconciliation, and Prepayment
- You will begin making payments on the first day of the month following a grace period three (3) months after you complete or withdraw from the program.
- Your monthly payments equal your income share times the amount of your monthly total earned income.
  - We calculate your initial payments using your pay stub, letter from your employer, or other source acceptable to us. If you do not provide documentation of your initial earnings or documentation for deferment, we will assume your earned income matches the average full-time income for occupations directly related to coding, UX/UI, and computer science (determined based on federal U.S. data).
  - We re-calculate your monthly payments any time your earned income changes, based on information you provide us, such as an updated pay stub.
  - We re-calculate your payments for the current calendar year using updated documentation of your earned income you provide on or before April 30, dated within 30 days of submission. If you do not provide documentation, we will assume your earned income has increased by ten (10) percent each year and adjust your monthly payments accordingly, effective June 1 each year.
- Each year we reconcile over- or under-payments made in the prior calendar year using copies of your year-end pay stub, Form W-2, Form 1099, Schedule K-1, consulting agreement, or similar source and validation of the dates of your employment (due on or before April 30), all of which must reflect each source of your earned income. Each year we may also require your authorization to access your tax return information directly from the Internal Revenue Service or similar taxing authority for any and all years of your payment term. You must reimburse us for any under-payments, and we will credit your account for any overpayments (or refund the excess amount if your payment term has ended).
- You may extinguish your obligations under your ISA before the payment term ends by paying a prepayment amount equal to $ 59,750, less payments made to date plus any outstanding fees.

### Deferment and Default
- After you leave the program, your account will be placed in a deferment status and you will not make payments if you: (i) have enrolled at least half time in higher education or training or (ii) earn less than $ 3,333.34/month (equivalent to $ 40,000.08/year), including if you are unemployed or not in the labor force.
  - We may extend your payment term by one month for each month of deferment, up to an additional 48 months.
- If you do not furnish the required documentation for one (1) year or do not pay the required amount listed on your bill for six (6) months, your account will be placed in an informational or payment default status, respectively.

See the Additional Terms for further information about deferment, nonpayment, and prepayment.

***KENZIE ACADEMY** WILL ENFORCE THE TERMS OF ITS ISAS TO THE FULLEST EXTENT ALLOWED BY LAW.*

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



| ADDITIONAL TERMS |
|---|

THIS INCOME SHARE AGREEMENT IS NOT A LOAN OR CREDIT. THIS AGREEMENT IS NOT AN ASSIGNMENT OF WAGES.

THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS. YOU MAY OPT-OUT OF ARBITRATION BY FOLLOWING THE PROCEDURE SET FORTH IN SECTION 29 BELOW. PLEASE READ SECTION 29 CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE.

YOU SHOULD SEEK ADVICE ABOUT YOUR FINANCING OPTIONS FROM A TRUSTED ADVISOR BEFORE SIGNING THIS AGREEMENT.

Read this entire document carefully and note Section 12 (about your tax liability), Section 17 (about information about you that we use and reports about you that we make to credit bureaus), and Section 26 (about this being an arms-length transaction between you and us).

This Income Share Agreement ("ISA" or "Agreement") includes: (i) this document, including the Participation Disclosure above and the Arbitration Agreement in Section 29 below (which you can reject); (ii) the Registration Form; (iii) the Final Disclosure, which will be provided to you upon execution of this Agreement to summarize the terms of the Agreement and your obligations (collectively with the Participation Disclosure referenced as the "Disclosures"); and (iv) the Consent to Electronic Communications. In the event of any inconsistency between this document and the Final Disclosure, or between the Final Disclosure and the other Disclosures, the Final Disclosure controls. In this Agreement, "you," "your," and "Participant" mean the person who completes and/or signs the Application Form and this Agreement. "We," "our," "us," and "Kenzie" mean Kenzie Academy and any of its successors, successors-in-interest, transferees, assignees, agents, designees, or servicers.

This Agreement is not a loan or other credit instrument. It represents your obligation to pay a specific percentage of your future earned income and does not give us any rights regarding your educational, training, or employment pursuits. The amount of the payments you will make will depend upon your future earned income. The total amount you will pay under this Agreement will vary depending upon your future earned income and may be more or less than the amount of funds credited to your account with us.

1. **Definitions**.

    (a) "Business Day" means Monday through Friday, except for federal holidays in the United States.

    (b) "Earned Income" means your total wage and self-employment income. On an annual basis, this amount is currently the sum of Line 7 ("Wages, salaries, tips, etc.") and Line 12 ("Business income or (loss).") of IRS Form 1040 or Line 1 ("Wages, salaries, and tips.") of IRS Form 1040EZ on U.S. federal income tax returns (2015 revision). If applicable, "Earned Income" includes all income reported on a joint income tax return, *minus*, to the extent documented to our satisfaction, any income earned solely by your spouse. In our discretion, we may estimate your

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



Earned Income using documentation other than your U.S. federal income tax return, provided the documentation is another verifiable source acceptable to us.

(c) "Higher Education or Training" means a program of study at an institution that is eligible under Title IV of the Higher Education Act, as amended from time to time, a gap year program, or a proprietary or vocational education or training program (e.g., a coding bootcamp program) that provides a more advanced degree or certification than you are receiving through this Agreement.

(d) "Income Share" means the fixed percentage of your Earned Income that you will owe during the Payment Term in return for the ISA Amount you receive. It is not an interest rate or annual percentage rate.

(e) "ISA Amount" means the amount of funds credited to your account with Kenzie. Together with any up-front payment, scholarship, or other financial assistance, the ISA Amount represents the market charge for the educational services you will receive from Kenzie through this ISA, plus any funding charges.

(f) "Monthly Payment" means your Income Share multiplied by the amount of your monthly Earned Income.

(g) "Payment Cap" means the maximum amount you will pay under this ISA, not including fees and collection costs.

(h) "Payment Term" means the number of months during which you pay us a fixed percentage of your Earned Income.

2. **Allocation; Setoff**. We will allocate the ISA Amount set forth in your Final Disclosure and send you an account confirmation notice that itemizes the allocated amounts. You understand that we may have a right to set off the allocations against amounts due to us.

3. **Your ISA Contract Terms**. The Participation Disclosure above sets forth your ISA Amount, Income Share, Payment Term, and Payment Cap, which terms will also be reflected in your Final Disclosure. In the event that these terms are adjusted during a review or certification process, you will be provided with a new or amended Final Disclosure. Your Final Disclosure and any new or amended Final Disclosure(s) will also inform you of your right-to-cancel period and instructions for exercising your right to cancel this Agreement in its entirety. In the event of any inconsistency between this ISA and the Disclosures, or between the Disclosures, the last Final Disclosure controls.

4. **Withdrawal**. If you leave the program before completing the program, you may be entitled to a reduction of your ISA Amount, Income Share, and other terms based on our refund policy. We will notify you as provided in Section 23 of any changes to your ISA Amount or other terms.

5. **Grace Period**. You will not make any payments while you are enrolled in the program or during your three (3) month grace period. Your grace period begins on the date you complete or withdraw from the program.

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



6.  **Payment of Your ISA**.

    (a)  **Payment Term**. Your Payment Term may be extended for up to an additional 48 months in certain circumstances as explained in Section 6(g) ("Documentation for Deferment").

    (b)  **Monthly Payments**. Except as set forth below, during the Payment Term, you agree to make your Monthly Payments to us by the first Business Day of each month. Payments are applied first to fees, if any, and then to the Monthly Payment amount owed. If you make all required payments on time during your Payment Term, you will not owe anything at the end of your Payment Term even if your payments sum to less than your ISA Amount.

    (c)  **Calculation of Your Initial Monthly Payments**. Not later than one month before your first scheduled payment is due, you agree to provide us with one of the following kinds of documentation, dated not earlier than thirty (30) days before the date you provide it to us:

        (i)  A copy of any pay stub or letter from your employer containing your salary information, a self-employment contract, a consulting agreement, a good faith estimate of your self-employment income for the current calendar year (along with documentation of the basis for your estimate), or another verifiable source acceptable to us (collectively, "Informal Earned Income Documentation") for each source of Earned Income; or

        (ii)  Documentation acceptable to us demonstrating a circumstance that qualifies you for a deferment as described in Section 6(g) ("Documentation for Deferment").

    (d)  **Annual Reconciliation**. On or before April 30 each year of the Payment Term and April 30 following the end of the Payment Term, you agree to provide us with:

        (i)  A completed and signed IRS Form 4506-T or Form 4506T-EZ (or any successor form), designating us as the recipient of your tax return information for returns covering any and all months of your Payment Term, dated not earlier than thirty (30) days before the date you provide it to us; <u>and</u> one of the following to verify your Earned Income or deferment status for the preceding year:

        (ii)  A year-end pay stub, Form W-2, Form 1099, Schedule K-1, or other verifiable source acceptable to us (collectively, "Formal Earned Income Documentation") for each source of Earned Income in the <u>prior calendar year</u>, or

        (iii)  If your ISA is in a deferment status, updated documentation to re-verify your Documentation for Deferment.

    If you are not in deferment status, we will use the Formal Earned Income Documentation to determine whether the payments you made in the prior calendar year were more or less than what you actually owed. If you underpaid, we will bill you for, and you agree to pay, the difference by the deadline stated in the bill. If you overpaid, we will apply excess amounts first to unpaid fees and second as a credit toward future payments due. If you overpaid in the final year of your Payment Term, we will refund the excess amounts.

    (e)  **Annual Adjustment of Monthly Payments**. We will re-estimate your Monthly Payment effective each June 1. You have two options:

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



    (i)    On or before April 30 each calendar year of your Payment Term, you can provide us with Informal Earned Income Documentation for each source of Earned Income for the <u>current calendar year</u> and we will use this to re-estimate your Monthly Payments.

    (ii)    Alternatively, if you do not provide us with new documentation and you are not in deferment, we will assume your Earned Income has increased by ten (10) percent and adjust your Monthly Payments accordingly, beginning with the payment due June 1. Since this is an estimate of your current Earned Income, it may result in Monthly Payments that are either higher or lower than what you actually owe. Any over- or under-payments will be reconciled the following calendar year as described in Section 6(d).

    (f)    **<u>Periodic Adjustment of Monthly Payments</u>**. If you are not in a deferment status, you must inform us as soon as you know of any changes in your monthly Earned Income and you must send us updated Informal Earned Income Documentation as soon as it is available to you. For example, if you sign a new employment agreement that will change your Earned Income, Informal Earned Income Documentation is available to you once you receive a copy signed by all of the parties to that employment agreement. When you send us Informal Earned Income Documentation, we will re-calculate your Monthly Payments. This may or may not result in a change in the amount of your Monthly Payments. In addition, if information that you provide us pursuant to Section 8 shows that your Earned Income has changed during the year, we may also modify your Monthly Payments at that time even if you did not supply us with updated Informal Earned Income Documentation. This includes changes in your Earned Income due to fluctuations in your self-employment income, whether as a consultant or otherwise. Periodic modifications in your Monthly Payments may avoid significant underpayments or overpayments during the annual reconciliation process set forth in Section 6(d).

    (g)    **<u>Payment Deferment and Extensions of Payment Term</u>**. After you leave the program, certain circumstances, such as going back to school or earning below an Earned Income threshold, qualify you for a deferment. If you provide Documentation for Deferment (as defined in Section 6(c)(ii)), we will place your account in an inactive/deferment status and you will not make Monthly Payments. Depending on the qualifying circumstance, we may extend your Payment Term by one month for each month of deferment, up to an additional 48 months, as described in the table below.

# EXHIBIT A
## Mr. Ruble's Income Share Agreement – April 20, 2019



| Qualifying Circumstance | Monthly Payment | Is Payment Term Extended? |
|---|---|---|
| At least half time enrollment (as defined by your institution) in Higher Education or Training and making satisfactory academic or training progress in the program | $0 | Yes |
| Employed full-time (working 35 hours or more per week on average at one or more jobs, including self employment) and earning less than $3,333.34 monthly (equivalent to an annual Earned Income of $40,000) | $0 | Yes |
| Employed part-time (working less than 35 hours per week on average at one or more jobs, including self employment) and earning less than $3,333.34 monthly (equivalent to an annual Earned Income of $40,000) | $0 | Yes |
| Unemployed (not working but actively seeking employment) | $0 | Yes |
| Not in the labor force (not working and not actively seeking employment; for instance, taking time off due to illness or to care for a child, relative or spouse) | $0 | Yes |

If your account is in an inactive/deferment status, you must notify us as soon as you know that you will no longer qualify for deferment under any of the circumstances described above, and you must send us updated Informal Earned Income Documentation as soon as it is available to you. For example, if you accept a three-month consulting agreement that will pay you $5,100, an amount which is in excess of $3,333.34 per month, Informal Earned Income Documentation is available to you once you receive an e-mail confirming your engagement and the terms of the consulting agreement.

If annual reconciliation or other verifiable documentation demonstrates that, while your account was in deferment, (a) you were not enrolled in a higher education or training program, (b) you worked and had an average monthly earned income of $3,333.34 or more for the months in which you worked, and (c) you made payments based on that income, we will retroactively count those months in which you worked toward your Payment Term obligation. For example, if your account was in deferment for an entire calendar year but you were paid $15,000 at the end of the year for contract work performed over the last three (3) months of the year, your average monthly income over those three (3) months would be $5,000, which exceeds the $3,333.34 threshold. If you make the full, required payment based on that $15,000 of earned income, we will retroactively count your three (3) months of work towards your remaining Payment Term obligation.

(h)     **Prepayment Amount; Cap on Payments**. If you desire to extinguish your obligations under this ISA prior to the expiration of your Payment Term, you may at any time pay

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



an amount (the "Prepayment Amount") equal to (i) the Payment Cap, (ii) less any Monthly Payments you already made, (iii) plus any outstanding fees, as satisfaction in full of your payment obligations under this Agreement. In addition, the sum of the total payments you owe under this Agreement will not exceed the Payment Cap, plus fees described in the disclosures (as applicable), regardless of your earned income.

(i) **Limit on Other Income-Based Agreements**. You agree that you have not and will not enter into additional private income-based agreements with us or another person that, in the aggregate, obligate you to pay a total share of your income exceeding twenty (20) percent of your Earned Income in any given month. Loans with income-driven repayment plans, including federal student loans, will not be considered private income-based agreements under this Section.

(j) **Waiver of ISA Due to Death or Total and Permanent Disability**. We will waive the remainder of what you owe under this Agreement, including any past due amounts and fees, if you die or become totally and permanently disabled. You or your estate must provide us with any tuition refund, which we will apply to the ISA Amount. If you would like to assert a waiver based on total and permanent disability, you will need to submit an application accompanied by a physician's statement and such other information or documentation that we may require, showing that you are unable to work in any occupation due to a condition that began or deteriorated after the date of the Final Disclosure and that the disability is expected to be permanent. Unless your Monthly Payments already are deferred under Section 6(g), you must continue to make payments until the time the disability application is completed to our satisfaction. If we approve your disability waiver application, the waiver will be effective as of the date of the completed application.

7. **Fees**. The following fees apply, subject to applicable law:

| Description | Amount |
|---|---|
| **Late Payment Fee** A fee charged if you do not make any payment due under this ISA on or before the 10th day after the due date. Any payment received after 6:00 PM Eastern time on a Business Day is deemed received on the next Business Day. | The lesser of $5 and 5% of the payment amount due |
| **Returned Payment Fee** A fee charged if any payment is returned or fails due to insufficient funds in your account or for any other reason. | $25 |

8. **Notice of Certain Changes**. You agree to notify us within thirty (30) days as provided in Section 23 of any change in your:

(a) primary residence address, phone number or email, or any other material change to information previously provided to us;

(b) employment status, including both terminations of employment and new employment;

(c) Earned Income measured on a monthly basis;

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



(d)     marital status, to the extent reasonably required for us to exclude earnings of your spouse from the calculation of your Earned Income; and

(e)     enrollment status in Higher Education or Training.

9.   **Review of Your Tax Returns**.  For the tax year in which your Payment Term begins through the tax year in which your Payment Term ends, you agree either (a) to file your U.S. federal income tax returns by no later than April 15 of the following year or (b) to notify us as provided in Section 23 of any extension you seek for filing federal income tax returns.  Moreover, if we request, you agree to complete, sign, and provide to us IRS Form 4506-T or Form 4506T-EZ (or any successor form), designating us as the recipient of your tax return information for returns covering any and all years of your Payment Term, within thirty (30) days of our request.  You agree to perform any similar requirements or procedures for any other applicable country's taxing authority.

10.  **Default and Remedies**.

(a)  **Default**.  Without prejudice to our other rights and remedies hereunder, and subject to applicable law, we may deem you to be in default under this Agreement upon: (i) your failure to make any payment in full and on time for six (6) consecutive months; (ii) your failure to provide Formal or Informal Earned Income Documentation or Documentation for Deferment as required by Sections 6(c), 6(d), and 6(g) within one (1) year of its due date; (iii) your failure to provide us a completed and signed IRS Form 4506-T or Form 4506T-EZ (or any successor form) within thirty (30) days of the annual deadline or our separate request, as set forth in Sections 6(d) and 9; or (iv) your violation of any other provision of this Agreement that impairs our rights, including but not limited to our receipt of information we deem to be materially false, misleading or deceptive.

(b)  **Remedies Upon Default**.  Subject to applicable law (including any notice and/or cure rights provided by applicable law), upon default, we may elect to (i) collect the Prepayment Amount, (ii) enforce all legal rights and remedies in the collection of such amount and related fees (including any rights available to us to set off any state tax refund) or (iii) utilize any combination of these remedies.  You agree to pay our court costs, reasonable attorneys' fees, collection fees charged by states for state tax refund set-off, and other collection costs related to the default (including our fees and costs due to your bankruptcy or insolvency, if applicable) to the extent permitted by applicable law.

(c)  **Equitable Remedies**.  If we conclude that money damages are not a sufficient remedy for any particular breach of this Agreement, then we will be entitled to seek injunctive or other equitable relief as a remedy for any such breach to the fullest extent permitted by applicable law.  Such remedy shall be in addition to all other remedies available at law or equity to us.

11.  **Truthfulness of Information**.  You represent that all information provided in connection with your Registration Form is true and accurate and you have not provided any false, misleading or deceptive statements or omissions of fact. You represent that:  (i) you have never been convicted of a felony or of any crime involving dishonesty or breach of trust under any federal or state statute, rule or regulation; (ii) you are not contemplating bankruptcy and you have not consulted with an attorney regarding bankruptcy in the past six months; (iii) you are at least the age of majority based on your current state of residence; (iv) you are a U.S. citizen (includes naturalized citizens) or permanent resident; and (v) you have filed all federal tax returns and

# EXHIBIT A
## Mr. Ruble's Income Share Agreement – April 20, 2019



reports as required by law, they are true and correct in all material respects, and you have paid all federal taxes and other assessments due.

      12.    **Correction of Errors**. All parties to this Agreement agree to fully cooperate and adjust all typographical, computer, calculation, or clerical errors discovered in any or all of the ISA documents including this document, the Registration, the Application, Application and Solicitation Disclosure, the Participation Disclosure, the Final Disclosure, and any Notice to Married Residents of Arizona or Wisconsin, as applicable. Errors in the names and/or addresses of the parties will be corrected by notice to all parties. In the event this procedure is used for any other errors, all parties involved will be notified and will receive a corrected copy of the changed document.

      13.    **Tax Reporting**. You acknowledge and agree that the federal, state, and local income tax consequences of this Agreement are not certain, and that we have not provided you with any tax advice or assurance of specific consequences. You agree that you have had an opportunity to consult with your own trusted advisor about the tax consequences of entering into this Agreement.

      Notwithstanding the foregoing, recognizing that all parties are best served by consistent, good faith tax reporting of the transaction in accordance with what the parties believe to be its economic substance, except as otherwise required by law, you agree to report the transaction for federal, state and local income tax purposes as a financial contract (in other words, as the "sale" by you of part of the income stream you will earn in the future) and not as a loan or any other form of indebtedness. Whether the financial contract results in a gain or loss will be unknown until the end of the Payment Term or until this Agreement is terminated, if prior to the end of the Payment Term. Under the tax law, when the parties do not know the extent of the gain or loss from a transaction when it occurs, they can treat the transaction as an "open transaction" and determine the consequences once the final terms are known. Under this tax treatment, it is expected that you will not recognize the ISA Amount as income when you enter into this Agreement. **Upon the maturity or termination of this Agreement, if the aggregate amount of funding credited to others on your behalf is greater than the aggregate sum of payments you made to us during your Payment Term, then you will likely recognize the difference as ordinary income equal to the difference between the amount of funding credited to others on your behalf and the sum of payments you made to us.** You agree to file your federal, state, and local income tax returns in accordance with this expected tax treatment unless you notify us in writing at least thirty (30) days before filing any such return (as provided in Section 23) that you intend to take a contrary position.

      You acknowledge that because the appropriate tax reporting is uncertain, the IRS and/or state or local taxing authorities may challenge the method of reporting described above, and new legislation may affect the federal, state or local tax treatment of this Agreement. If such a challenge were to succeed, you could have significantly greater tax liability at a significantly earlier time or times than would be the case under the method described above. While we are under no obligation to do so, it also is possible that we may seek a ruling from the IRS during your Payment Term regarding these tax consequences. **You agree and acknowledge that you have had an opportunity to consult with your own trusted advisor about the tax consequences of entering into this ISA and receiving the ISA Amount.**

      14.    **Electronic Delivery**. We may decide to deliver any documents or notices related to this Agreement by electronic means. Except as otherwise provided in the Consent to Electronic Communications, you agree to receive such documents or notices by electronic delivery and to

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



participate through an on-line or electronic system established and maintained by us or a third party designated by us.

  15. **Automatic Reminders**. We may use automated telephone dialing, text messaging systems and electronic mail to provide messages to you about payment due dates, missed payments and other important information.  The telephone messages may be played by a machine automatically when the telephone is answered, whether answered by you or someone else.  These messages may also be recorded in your voicemail.  You give us your permission to call or send a text message to any telephone number you provide us now or in the future and to play pre-recorded messages or send text messages with information about this Agreement over the phone.  You also give us permission to communicate such information to you via electronic mail.  You agree that we will not be liable to you for any such calls or electronic communications, even if information is communicated to an unintended recipient.  You understand that, when you receive such calls or electronic communications, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services.  You agree that we have no liability for such charges.  If you want to change your communication preferences, such as no longer wanting to receive automatic reminders, you can update your preferences through your online servicing account or by contacting us at answers@vemo.com.

  16. **Telephone Recording**.  You understand and agree that we may monitor and/or record any of your phone conversations with us.

  17. **Consent to Credit and Income Verification; Credit Reporting**. You authorize us to obtain your credit report, verify the information that you provide to us, and gather additional information that may help us assess and understand your performance under this Agreement.  You understand that we may verify your information and obtain additional information using a number of sources, including but not limited to consumer reporting agencies, other third-party databases, past and present employers, other school registrars, public sources, and personal references provided by you.  If you ask, you will be informed whether or not we obtained a credit report and, if so, the name and address of the consumer reporting agency that furnished the report.  You also understand and agree that we may obtain a credit report and gather additional information, including from the sources described above, in connection with the review or collection of your ISA.  You consent to our sharing of your information with our affiliates and financing parties, which we will do using reasonable data security procedures.

  **You authorize us to report information about this Agreement to credit bureaus. Although this Agreement is not a loan or other credit instrument, we may inform credit bureaus about your positive payment behavior when you make payments as agreed. However, this also means that late payments, missed payments or other defaults under this Agreement may be reflected in your credit report.**

  18. **Amendments and Waivers**.  We may amend this Agreement by providing you with 30 days advance written notice as provided in Section 23 of any significant changes to the address in our records.  However, if an amendment is necessary to comply with changes in applicable law, we may amend this Agreement without providing you with advance notice.  No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



19. **Customer Identification Policy.** To help the government fight the funding of terrorism and money laundering activities, we will obtain, verify and record information that identifies each person who enters into this Agreement. What this means for you: when you enter into this Agreement, we reserve the right to ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents, or for you to provide true and correct copies to us.

20. **Governing Law.** The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto and thereto shall be governed, construed and interpreted in accordance with the laws of the State of Indiana, without giving effect to principles of conflicts of law. Notwithstanding the foregoing, federal law shall govern the Arbitration Agreement in Section 29.

21. **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between you and us relating to the subject matter hereof.

22. **Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. We may assign any of our rights, economic benefits or obligations under this Agreement. You may not assign, whether voluntarily or by operation of law, any of your rights, economic benefits or obligations under this Agreement, except with our prior written consent given in accordance with Section 23.

23. **Notices.** Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and, except as otherwise provided, shall be deemed sufficient when sent by email or two (2) Business Days after being deposited in the U.S. mail as certified or registered mail with postage prepaid. Notices to Kenzie shall be sent to answers@vemo.com or to Kenzie c/o Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677, or as subsequently modified by written notice. Notices to Participant shall be sent to the e-mail and/or physical mail addresses you provided in your Registration Form, or as subsequently modified by written notice to us.

24. **Severability.** Except as set forth in the Arbitration Agreement, if one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

25. **Execution; Electronic Transactions.** This Agreement may be executed electronically or manually. Execution may be completed in counterparts (including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically), which together constitute a single agreement. Any copy of this Agreement (including a copy printed from an image of this Agreement that has been stored electronically) shall have the same legal effect as an original.

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



26. **Independent Decision to Enter into this ISA**. **You agree that this Agreement is an arms-length transaction. You agree that we are not an agent or fiduciary or advisor in your favor in connection with the execution of this Agreement. You agree that we have not provided any legal, accounting, investment, regulatory or tax advice with respect to this Agreement.**

27. **Marriage**. If you are married or get married, you agree to document your income separately from your spouse's and to provide us with the necessary documentation to calculate your individual Earned Income. If you are married and live in Wisconsin on the date you sign this Agreement or during the term hereof, your signature on this ISA confirms that any financial obligation incurred as a result of this ISA is being incurred in the interest of your marriage or family. If you are married and live in Texas on the date you sign this Agreement or during the term hereof, you agree to hold your Earned Income in a separate bank account from your spouse.

28. **Notice and Cure**. Prior to initiating a lawsuit or arbitration regarding a Claim (as defined in Section 29 below), the party asserting the Claim (the "Complaining Party") shall give the other party (the "Defending Party") written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days, to resolve the Claim. If we are the Complaining Party, we will send the Claim Notice to you at your e-mail and/or physical mail address appearing in our records or, if you are known to be represented by an attorney, to your attorney at his or her office address. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. The Complaining Party must reasonably cooperate in providing any information about the Claim that the Defending Party reasonably requests.

29. **Arbitration Agreement**. Except as expressly provided below, Participant and Kenzie agree that any past, present or future claim, dispute or controversy, regardless of the legal theory on which it is based, arising out of, relating to or in connection with this Agreement, or that arises from or is related to any relationship resulting from this Agreement (a "Claim"), shall be submitted to and resolved on an individual basis by binding arbitration under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA") before the American Arbitration Association (the "AAA") under its Consumer Arbitration Rules (the "AAA Rules"), in effect at the time the arbitration is brought, unless Kenzie and the Participant agree in writing to arbitrate before a different party. If a Claim is arbitrated, it will be resolved by a neutral third-party arbitrator, and not by a judge or a jury, and Participant and Kenzie knowingly and voluntarily waive the right to a jury trial on such Claim. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). If the AAA is unable to serve as administrator and Kenzie and the Participant cannot agree on a replacement, a court with jurisdiction will select the administrator or arbitrator. The AAA Rules are available online at http://www.adr.org. For purposes of this Arbitration Agreement, (1) the term "Kenzie" includes (a) Kenzie Academy, (b) any successor, successor-in-interest, transferee, assignee, agent, designee or servicer of Kenzie Global; (c) any affiliates, subsidiary, and/or parent of the persons and entities referenced in (a) or (b), (d) the officers, directors, employees, stockholders, members, affiliates, subsidiaries, and parents of all of the foregoing in (a) through (c); and (e) any party named as a co-defendant with Kenzie Global in a Claim asserted by the Participant, such as servicers and debt collectors; and (2) the term "Participant" means the Participant. Notwithstanding the above, if a Claim that the Participant or Kenzie wishes to assert against the other is cognizable in a small claims

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



court (or your state's equivalent court) having jurisdiction over the Claim and the parties, the Participant or Kenzie may pursue such Claim in that small claims court; however, if the Claim is transferred, removed, or appealed to a different court, it shall be resolved by arbitration. Moreover, any dispute concerning the validity or enforceability of this Arbitration Agreement must be decided by a court; any dispute concerning the validity or enforceability of the Agreement as a whole is for the arbitrator.

Any arbitration hearing that you attend will take place in a location that is reasonably convenient for you. If you cannot obtain a waiver of the AAA's or arbitrator's filing, administrative, hearing and/or other fees, we will consider in good faith any request by you for us to bear such fees. Each party will bear the expense of its own attorneys, experts and witnesses, regardless of which party prevails, unless applicable law or this Agreement gives a right to recover any of those fees from the other party. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and privilege rules that would apply in a court proceeding, and shall be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (which shall be governed by the constitutional standards applicable in judicial proceedings), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

This Arbitration Agreement shall survive the termination of this ISA, your fulfillment or default of your obligations under this ISA and/or your or our bankruptcy or insolvency (to the extent permitted by applicable law). In the event of any conflict or inconsistency between this Arbitration Agreement and the administrator's rules or other provisions of this ISA, this Arbitration Agreement will govern.

**CLASS ACTION WAIVER: IF A CLAIM IS ARBITRATED, NEITHER PARTICIPANT NOR KENZIE WILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER.** Further, unless both Participant and Kenzie agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other persons. The arbitrator shall have no authority to conduct any class, private attorney general or other representative proceeding, and shall award declaratory or injunctive relief only in favor of the party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. If a determination is made in a proceeding involving Kenzie and the Participant that the class action waiver is invalid or unenforceable, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided that the determination concerning the class action waiver shall be subject to appeal.

**RIGHT TO REJECT: Participant may reject this Arbitration Agreement by mailing a signed rejection notice to Kenzie Academy, c/o Vemo Education, 3905 Tampa Rd #2453, Oldsmar, FL, 34677, or by faxing it to (813) 438-7862 within thirty (30) calendar days after the date of this Agreement. Any rejection notice must include Participant's name, address, email address, telephone number and account number. If you reject this Arbitration Agreement, that will not affect any other provision of the Agreement.**

Contract – v7

Page 14 of 16

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



30. **Waiver of Jury Trial.** YOU ACKNOWLEDGE AND AGREE THAT, INASMUCH AS THE PURPOSE OF THE ARBITRATION AGREEMENT IN SECTION 29 IS TO REQUIRE THAT ALL CLAIMS BE RESOLVED BY BINDING ARBITRATION, NO PARTY TO THIS AGREEMENT SHALL BE ENTITLED TO A TRIAL BY JURY IF SUCH ARBITRATION AGREEMENT IS IN EFFECT. MOREOVER, TO THE EXTENT YOU TIMELY AND ADEQUATELY REJECT THE ARBITRATION AGREEMENT IN SECTION 29, OR IF FOR ANY OTHER REASON A CLAIM IS NOT ARBITRATED, KENZIE AND THE PARTICIPANT KNOWINGLY AND VOLUNTARILY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM.

[Signature Page Follows]

# EXHIBIT A
# Mr. Ruble's Income Share Agreement – April 20, 2019



The parties, intending to be legally bound, have executed this Agreement as of the date set forth below.

**NOTICE TO PARTICIPANT**
1. **Do not sign this ISA before you read it or if it contains any blank terms.**
2. **You are entitled to a completely filled in copy of this ISA.**
3. **You have the right to pay off this ISA in advance by paying the amount set forth in Section 6(h).**

**PARTICIPANT: By signing below, you acknowledge that you have read this entire Agreement carefully and agree to its terms, including Section 12 (about your tax liability), Section 17 (about information about you that we use and reports about you that we make to credit bureaus), Section 26 (about this being an arms-length transaction between you and us), and Section 29 (about arbitration on an individual basis and class-action waiver, including your opt-out right).**

| KENZIE ACADEMY: | | PARTICIPANT: | |
|---|---|---|---|
| By: | *(Signature)* | By: | *(Signature)* |
| Date: | Apr 20, 2019 | Date: | Apr 20, 2019 |
| Name: | Chok Ooi | Name: | Garrett Ruble |
| Title: | Co-Founder & CEO | | |
| Address: | **Kenzie Academy**<br>47 S. Meridian St<br>Indianapolis, IN<br>46204 | Address: | Indianapolis, Indiana |
| | | Phone: | |
| E-mail: | chok@kenzie.academy | E-mail: | |

Contract – v7

Page 16 of 16

Page **30** of **30**